**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230429-U

Order filed December 30, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| FIRST MIDWEST EQUIPMENT FINANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0429 Circuit No. 20-L-254 |
| ORYX OILFIELD SERVICES, LLC; KODIAK TRENCHING AND BORING, LLC; and MATTHEW J. MAHONE, | ) ) ) ) | The Honorable Timothy J. McJoynt, |
| Defendants-Appellants. | ) ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   In an appeal in a civil lawsuit for breach of contract where the parties entered into a settlement agreement to resolve their dispute, the appellate court held that the trial court properly denied defendants' section 2-1401 petition to vacate prior orders that the trial court entered granting plaintiff's first motion to enforce the settlement agreement. The appellate court, therefore, affirmed the trial court's judgment.

¶ 2     In the context of a breach of contract case where the parties entered into a settlement

agreement to resolve their dispute, defendants, Oryx Oilfield Services, LLC, Kodiak Trenching

and Boring, LLC, and Matthew J. Mahone, filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)) seeking to vacate prior orders that the trial court entered granting plaintiff's motion to enforce the settlement agreement. Following full briefing and a hearing on the matter, the trial court denied defendants' petition. Defendants filed a motion to reconsider, which the trial court also denied. Defendants appeal. We affirm the trial court's judgment.

¶ 3                                                I. BACKGROUND

¶ 4        Plaintiff was an Illinois corporation that was in the business of providing financing for the purchase of commercial equipment. Plaintiff's principal place of business was in Elk Grove Village, Illinois. Oryx Oilfield Services, LLC, and Kodiak Trenching and Boring, LLC (collectively referred to hereinafter as the Oryx defendants), were Texas limited liability companies that were in the business of providing construction contracting services in the oil and gas industry. The Oryx defendants' principal place of business was in Grapevine, Texas.

¶ 5        In 2015, the Oryx defendants purchased or otherwise acquired seven pieces of heavy machinery, known as trenchers, for approximately $4.5 million. The trenchers were specialized pieces of equipment that were used to dig pipeline trenches for the oil and gas industry. The Oryx defendants made the purchase in two separate transactions and financed the transactions through plaintiff by entering into two separate equipment financing agreements with plaintiff. Among other things, the financing agreements gave plaintiff the right to take possession of and sell the trenchers if the Oryx defendants defaulted on the agreements. The amount owed under each of the financing agreements was personally guaranteed by the Oryx defendants' member or managing member, codefendant Matthew J. Mahone. Mahone entered into two separate guaranty agreements with plaintiff for that purpose. At some point thereafter, defendants (collectively

2

referring to the Oryx defendants and Mahone) allegedly defaulted on all four agreements (the two financing agreements and two guaranty agreements) by failing to make payment when it was due.

¶ 6    In 2019, defendants made arrangements for several of the trenchers to be transported to an equipment dealer in Texas to be serviced or repaired. After declaring that defendants were in default on the equipment financing agreements, plaintiff contacted the dealer and told the dealer not to release any of the trenchers to defendants. As a result, the dealer refused to release any of the trenchers to defendants without plaintiff's permission.

¶ 7    In February 2020, plaintiff filed its original complaint in the underlying case against the Oryx defendants for breach of the equipment financing agreements. When the original complaint was filed, the Oryx defendants owed approximately $888,000 on the two equipment financing agreements. The following month, plaintiff filed a first amended complaint, the operative pleading in the underlying case, and added Mahone as an additional defendant. The first amended complaint contained four counts: two counts against the Oryx defendants for breach of the equipment financing agreements and two counts against Mahone for breach of the guaranty agreements.

¶ 8    In June 2020, defendants filed their answer and affirmative defenses to the first amended complaint. Defendants also filed a two-count counterclaim against plaintiff for violation of the Uniform Commercial Code for allegedly selling some of the trenchers improperly and for trespass to chattels for allegedly keeping an unsecured trencher from being returned to defendants.

¶ 9    During pretrial proceedings, the parties entered into settlement negotiations, and the case was continued periodically for that purpose. Plaintiff obtained a stay from the trial court so that

3

plaintiff would not have to respond to defendants' answer, affirmative defenses, or counterclaim while the settlement discussions were ongoing.

¶ 10    In October 2020, after the parties had represented to the trial court that they had reached a settlement agreement in principle and that they were reducing the agreement to writing, plaintiff filed a motion to enforce the settlement agreement and for entry of a stipulated judgment against defendants (referred to hereinafter at times as the first motion to enforce or the first motion). Plaintiff alleged in the first motion that after several months of good faith negotiations and after the parties reached a settlement agreement orally and through email and represented to the trial court that they had reached an agreement, defendants refused to sign, or perform under, the final version of the settlement agreement. Plaintiff asserted that despite defendants' refusal to sign the written document, defendants were legally bound by the settlement agreement and defaulted on that agreement by failing to make the required payments. According to plaintiff, it provided defendants with notice but defendants failed to cure the default. Plaintiff asked the trial court to enforce the settlement agreement as a valid and binding contract between the parties and to enter judgment against defendants of approximately $581,000, plus default interest, late fees, attorney fees, and costs, as provided for in the stipulated-judgment paragraph of the unsigned agreement.

¶ 11    Plaintiff attached a copy of the unsigned settlement agreement to its first motion to enforce as an exhibit. Of relevance to this appeal, the unsigned written document contained the following provisions: (1) defendants would pay plaintiff a total settlement amount of approximately $581,000 by making an initial payment to plaintiff of $15,000 on or before October 1, 2020, a second payment to plaintiff of $35,000 on or before November 1, 2020, monthly installment payments to plaintiff of $15,000 each from December 2020 through May 2021, and a final balloon payment to plaintiff of the remaining balance on or before June 1,

4

2021; (2) as long as defendants were in compliance with the settlement agreement, plaintiff would refrain from exercising its right to transfer, sell, or otherwise dispose of a certain trencher, referred to as trencher-121, that was being held by the dealer, but if defendants were in default under the settlement agreement, plaintiff would immediately be entitled to exercise any and all rights that it had with regard to the trencher, including its right to sell the trencher; (3) if defendants were in default under the settlement agreement (by failing to make payment or by failing to dismiss their counterclaim) and failed to cure the default within seven days after having received written notice thereof, plaintiff would immediately be entitled to reinstate its lawsuit and to enter a stipulated judgment against defendants of approximately $581,000, plus default interest, late fees, attorney fees, costs, and expenses, minus any payments that defendants had made under the settlement agreement and the net proceeds that plaintiff had received from the sale of the trencher; and (4) defendants acknowledged and agreed that the parties' settlement agreement was legal, valid, binding, and enforceable, that defendants had no defenses to plaintiff's enforcement of the agreement and to entry of a stipulated judgment as provided for in the agreement if a default occurred, and that the forbearance contemplated in the agreement did not give rise to any defenses, counterclaims, or offsets except as provided in the agreement.

¶ 12        Defendants filed a response and opposed plaintiff's first motion to enforce. In their response, defendants asserted that no binding and enforceable settlement agreement existed between the parties because, as was clear from the correspondence and the proposed draft settlement agreements that the parties had exchanged, the parties intended that no such agreement would exist until a written settlement agreement had been fully executed by the parties. Defendants maintained that there was no enforceable settlement agreement between the parties under Illinois law and asked the trial court to deny plaintiff's first motion to enforce in its

5

entirety. In their response, defendants did not address the issue of whether notice of default had been given.

¶ 13    Plaintiff filed a reply and asserted that the parties, through their attorneys, manifested their intent to be bound by the terms that they agreed to in their email correspondence, even though both sides were aware that a formal written settlement agreement would later follow. Plaintiff again asked the trial court to grant plaintiff's first motion to enforce.

¶ 14    On April 7, 2021, an evidentiary hearing was held on plaintiff's motion. At the conclusion of the hearing, the trial court granted plaintiff's motion in part and found that the settlement agreement between the parties was a valid and enforceable agreement but reserved its ruling as to all other relief requested by plaintiff, including plaintiff's request for the entry of a stipulated judgment. A written order to that effect (referred to hereinafter at times as the trial court's April 2021 order or ruling) was filed the following day. The trial court directed the parties to file supplemental briefs to address whether the trial court had the authority to reinstate or reform the payment terms of the settlement agreement and determine whether the trial court could require defendants to sign the written settlement agreement.

¶ 15    On August 16, 2021, following supplemental briefing, the trial court entered a further ruling on plaintiff's first motion to enforce (referred to hereinafter at times as the trial court's August 2021 order or ruling). The trial court granted plaintiff's motion in part and found that each paragraph of the parties' proposed written settlement agreement was valid and enforceable. The trial court then denied plaintiff's request for a stipulated judgment and, instead, reformed the parties' settlement agreement and set new payment dates so that defendants would have an opportunity to make the required payments. As part of its ruling, the trial court dismissed plaintiff's first amended complaint and defendants' counterclaim with prejudice as the parties

6

provided in the settlement agreement and retained jurisdiction over the matter so that it could enforce the settlement agreement.

¶ 16    Following entry of the trial court's August 2021 order, defendants initially complied with the payment provisions of the settlement agreement as reformed by the trial court. Defendants paid plaintiff $15,000 on or before October 1, 2021; $35,000 on or before November 1, 2021; $15,000 on or before December 3, 2021; $15,000 on or before January 3, 2022; and $15,000 on or before February 3, 2022. Defendants also made payments of $15,000 in March and April 2022, but those payments were made late. Defendants made no further payments after that point.

¶ 17    In May 2022, approximately nine months after the August 2021 order had been entered, plaintiff filed a motion to reinstate the case, to enforce the settlement agreement, and for entry of a stipulated judgment (referred to hereinafter at times as the second motion to enforce or the second motion). In the second motion, plaintiff alleged that defendants were in default of the parties' settlement agreement because defendants had failed to pay their May 2022 payment, were notified of the default, and failed to cure the default. Plaintiff asked the trial court to reinstate the case for prove-up of damages, attorney fees, costs, and expenses, as provided for in the stipulated-judgment paragraph of the parties' settlement agreement.

¶ 18    The following month, in June 2022, defendants filed a motion for leave to conduct discovery in Texas to determine if plaintiff had sold trencher-121. In the motion, defendants alleged that they had reason to believe that plaintiff had sold the trencher at some point prior to plaintiff's filing of the second motion to enforce. Defendants sought to depose representatives of the dealer to determine the circumstances under which the trencher had left the dealer's custody and control. Later that same month, the trial court granted defendants' motion for leave.

7

¶ 19        Approximately three months later, in September 2022, defendants filed a response and opposed plaintiff's second motion to enforce. Defendants asserted in their response that the discovery they conducted had shown that plaintiff sold trencher-121 to a third party in Mexico in November 2020. Defendants claimed, therefore, that plaintiff was barred from enforcing the settlement agreement under Illinois law because plaintiff materially breached the settlement agreement. Defendants attached a copy of a deposition that they had recently taken of one of the dealer's representatives that indicated that the trencher had been sold and a copy of the bill of sale to their response. Defendants noted further in their response that plaintiff failed to disclose the sale of the trencher to either the trial court or defendants, even though there had been several court proceedings that had taken place after the sale occurred.

¶ 20        The following month, plaintiff filed a reply in support of its second motion to enforce. In its reply, plaintiff admitted for the first time that it sold the trencher in about November 2020 and acknowledged that it should have disclosed the sale to the trial court. Plaintiff asserted, however, that it was not bound to perform under the settlement agreement and to refrain from selling the trencher while its first motion to enforce was pending because prior to that point, defendants had already: (1) anticipatorily repudiated the settlement agreement by unequivocally and unambiguously declaring that they would not sign, or perform (make payment) under, the settlement agreement; and (2) materially breached the settlement agreement by failing to make the two initial payments (the October 1, and November 1, 2020, payments) and by failing to dismiss their counterclaim. In making that assertion, plaintiff pointed out that it also had the express right to repossess, sell, or otherwise dispose of the trencher under the underlying equipment financing agreements that the parties had signed. Plaintiff asserted further and in the alternative that even if the trial court went on to find that plaintiff was bound by the settlement

8

agreement during the pendency of plaintiff's first motion to enforce, plaintiff's sale of the trencher was in accordance with the express terms of the settlement agreement, based upon defendants' default, and did not breach the terms of the settlement agreement. Plaintiff also pointed out that defendants did not deny that they had failed to make the May 2022 monthly payment and the June 2022 final balloon payment as provided for in the reformed settlement agreement and again asked the trial court to grant plaintiff's second motion to enforce.

¶ 21        On October 25, 2022, the trial court held a hearing on plaintiff's motion. A new trial judge had been assigned to hear the case. After listening to the oral arguments of the attorneys, the new trial judge granted plaintiff's motion in part and ordered defendants to make the payments that the prior trial judge had previously required in the August 2021 ruling. In addition, the new trial judge ordered plaintiff to provide an updated payoff amount that showed a setoff for defendants for the sale of trencher-121. In announcing his ruling (referred to hereinafter at times as the October 2022 order or ruling), the new trial judge made some comments that appeared to be inconsistent with the prior trial judge's ruling. The new trial judge also noted that neither party had informed the prior trial judge of the sale of the trencher and that defendants had not appealed the August 2021 ruling and had not filed a section 2-1401 petition to collaterally attack that ruling.

¶ 22        The following month, defendants filed a motion to reconsider. In the motion, defendants asserted that the new trial judge made an error of law in making his ruling because he misinterpreted the prior trial judge's August 2021 order. Defendants asked the new trial judge to reconsider and vacate his October 2022 ruling; to deny plaintiff's second motion to enforce in light of plaintiff's admission that it sold trencher-121 in November 2020, which defendants claimed was a breach of the settlement agreement; and to enter an order discharging defendants

9

of all further payment obligations since plaintiff's alleged material breach of the settlement agreement was incurable.

¶ 23        In December 2022, while the motion to reconsider was pending, defendants filed a section 2-1401 petition to vacate the trial court's April and August 2021 orders—the orders that granted in part plaintiff's first motion to enforce the settlement agreement. In the petition, defendants alleged that they had a meritorious defense to plaintiff's first motion to enforce because plaintiff was in material breach of the settlement agreement when the two orders at issue were entered and could not, therefore, enforce the settlement agreement under Illinois law. According to defendants, plaintiff materially breached the settlement agreement by failing to give defendants notice and an opportunity to cure the default and by selling trencher-121. Defendants also alleged that they had acted with due diligence in raising their defense and in filing their section 2-1401 petition because plaintiff had hidden the sale of the trencher from defendants and the trial court and defendants had only recently learned from conducting discovery in Texas that the trencher had been sold.

¶ 24        Plaintiff filed a motion to dismiss defendants' section 2-1401 petition pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)) asserting that defendants failed to state a claim for section 2-1401 relief because defendants failed to allege sufficient facts to establish that they had a meritorious defense to plaintiff's first motion to enforce settlement. Plaintiff also filed a response opposing defendants' motion to reconsider. In its motion to dismiss and its response, plaintiff made the same three arguments regarding whether defendants sufficiently alleged a meritorious defense and whether the trial court properly granted (in part) plaintiff's first motion to enforce.

¶ 25         First, plaintiff asserted that because defendants had repudiated and breached the settlement agreement from the outset, plaintiff had no obligation to abide by the terms of the settlement agreement and to refrain from selling the trencher (the first breach rule). In making that assertion, plaintiff maintained that it had not elected to continue in the settlement agreement when it filed its first motion to enforce (after defendants' initial breach) but, rather, had abandoned the settlement agreement and essentially sued defendants for damages for breach by asking the trial court to enter the stipulated judgment against defendants. Second, and in the alternative, plaintiff asserted that even if the trial court went on to determine in ruling upon the two pending motions that plaintiff continued with the settlement agreement after defendants' initial breach and that plaintiff was, therefore, obligated to abide by the terms of the settlement agreement, the trial court should still rule in plaintiff's favor on both motions because plaintiff had acted in accordance with, and had not breached, the settlement agreement when plaintiff sold the trencher in response to defendants' initial default as the settlement agreement and the underlying equipment financing agreements allowed plaintiff to do. Third, and also in the alternative, plaintiff asserted that even if the trial court determined that plaintiff continued with the settlement agreement after defendants' initial breach and that plaintiff violated the agreement by selling the trencher, the trial court should still rule in plaintiff's favor on both motions because defendants were not harmed by the sale of the trencher since defendants were looking into the possibility of selling the trencher and applying the proceeds of a sale to the amount due when defendants learned that plaintiff sold the trencher. Further, that if the trial court had been aware of the sale before the court entered its orders granting plaintiff's first motion to enforce, the trial court would have merely applied the proceeds to the balance owed by defendants under the settlement agreement as plaintiff intended to do. Plaintiff acknowledged in its response to the

11

motion to reconsider, however, that the new trial judge misinterpreted certain aspects of the prior trial judge's August 2021 order when the new trial judge made his October 2022 ruling.

¶ 26 Defendants subsequently filed a reply in support of their motion to reconsider and a response to plaintiff's motion to dismiss. In their reply, defendants asserted that plaintiff's acknowledgment—that the new trial judge misinterpreted certain aspects of the prior trial judge's order—compelled reconsideration of the new trial judge's October 2022 ruling. Defendants also asserted that plaintiff committed an incurable, material breach of the settlement agreement by selling the trencher without first giving defendants notice and an opportunity to cure the default. As a result, defendants maintained, plaintiff could never meet its burden for enforcing the settlement agreement against defendants. In addition, defendants asserted plaintiff's breach of the settlement agreement was material and not harmless because defendants receiving a credit for the proceeds of the sale of the trencher was not the same as defendants receiving the machine itself. Defendants asserted further that plaintiff could not rely on the first breach rule because plaintiff elected to continue in the settlement agreement when it moved to enforce the agreement and was, therefore, bound by the obligations that the settlement agreement imposed upon it, including the obligation not to sell the trencher. Defendants made some of those same arguments in their response to plaintiff's motion to dismiss.

¶ 27 Plaintiff filed a reply in support of its motion to dismiss and repeated its prior arguments. Plaintiff also asserted that it had given defendants notice and an opportunity to cure the default in October 2020, prior to the sale of the trencher, as provided for in the settlement agreement. Plaintiff asserted further in its reply that defendants were mischaracterizing plaintiff's use of the word "enforce" in plaintiff's first motion to enforce settlement to try to create the false impression that plaintiff had chosen to continue with the settlement agreement after defendants'

12

initial breach and that plaintiff was, therefore, bound by its obligation not to sell the trencher. Plaintiff maintained that moving for liquidated damages did not constitute continuing with the settlement agreement.

¶ 28        In April 2023, the trial court held a hearing on defendants' motion to reconsider and on plaintiff's motion to dismiss. After listening to the oral arguments of the parties' attorneys, the trial court denied both motions.

¶ 29        The following month, plaintiff filed a response and opposed defendants' section 2-1401 petition. In its response, plaintiff generally repeated the same three arguments that it previously made in the proceedings on the prior motions. Plaintiff also asserted that defendants failed to exercise due diligence in raising their alleged defense and in filing their section 2-1401 petition. Defendants filed a reply and argued that they acted with due diligence in raising their meritorious defense and in filing their petition.

¶ 30        In June 2023, the new trial judge held a hearing on defendants' section 2-1401 petition. After listening to the attorneys' arguments, the new trial judge denied the petition. The new trial judge commented that the issue of whether defendants acted with due diligence was a "close call" but made no express ruling on that issue. Instead, the new trial judge focused upon whether defendants' established a meritorious defense, which the new trial judge indicated was the real issue before the court in this case. The new trial judge noted that the arguments made in the section 2-1401 proceeding were the same arguments that were made in the prior hearing on defendants' motion to reconsider and were ruled upon by the new trial judge in that proceeding. According to the new trial judge, he had "settled [that] issue equitably" in his October 2022 ruling when he upheld the prior trial judge's order regarding settlement and added provisions to take into consideration the sale of the trencher and to require that the proceeds of the sale be

13

credited to defendants. The new trial judge commented further in denying defendants' petition that there was "no misrepresentation, no fraud, no errors by the Court, no change in the law, no new evidence, [and] simply dissatisfaction with the results."

¶ 31    Defendants filed a motion to reconsider, which the trial court denied after full briefing and a hearing on the matter. Defendants appeal.

¶ 32                              II. ANALYSIS

¶ 33    On appeal, defendants argue that the trial court erred in denying defendants' section 2-1401 petition to vacate the April and August 2021 orders—the orders that granted (in part) plaintiff's first motion to enforce the settlement agreement. In support of that argument, defendants assert that they established all of the elements required to obtain section 2-1401 relief and that their petition should have been granted.[1] More specifically, defendants contend that they established the meritorious-defense element necessary for section 2-1401 relief. They argue that at the time of the April and August 2021 orders, plaintiff was barred from enforcing the settlement agreement under Illinois law since plaintiff had materially breached the agreement by selling trencher-121 without giving defendants notice and an opportunity to cure the default. In making that contention, defendants acknowledge that they breached the settlement agreement first by failing to make the two initial payments that were required under the agreement. Defendants maintain, however, that plaintiff elected to continue with the settlement agreement after that point by filing its first motion to enforce and that plaintiff was, therefore, bound by its obligations under the agreement, including its obligation not to sell the trencher without giving defendants notice and an opportunity to cure.

---

[1]For the purposes of clarity and the convenience of the reader, we have rearranged the order of defendants' arguments on appeal.

14

¶ 34        As for the due-diligence element necessary for section 2-1401 relief, defendants contend that they established that element as well because any delays as to either aspect of due diligence (due diligence in raising their meritorious defense or due diligence in filing their section 2-1401 petition) were caused by plaintiff failing to disclose that it had sold the trencher. Second, in support of their argument on this issue, defendants assert that the denial of their petition on any of the grounds indicated by the trial court (the new trial judge) in making its rulings on the petition, that the petition failed to present any new evidence, that the petition failed to establish that plaintiff had materially breached the settlement agreement (defendants' alleged meritorious defense), and that the petition was merely a repeat of arguments that the trial court had previously addressed—was error and an abuse of discretion.

¶ 35        In making that assertion, defendants maintain that they established clearly and without contradiction in the section 2-1401 proceeding that new evidence existed (the fact that plaintiff had sold the trencher in November 2020, that plaintiff had breached a material term of the agreement by selling the trencher without providing defendants with notice and an opportunity to cure, and that the section 2-1401 proceeding was not merely a repeat of the October 2022 hearing on plaintiff's second motion to enforce since the October 2022 hearing did not address the argument that plaintiff was barred from enforcing the settlement agreement because plaintiff had materially breached the agreement. Third, and as their final assertion, defendants contend that their section 2-1401 petition should have been granted because the equities and the interests of justice favored granting the petition in (1) selling the trencher without giving defendants notice and an opportunity to cure, (2) continuing to seek enforcement of the settlement agreement in the trial court even though the trencher had been sold, and (3) failing to disclose the sale of the trencher to the trial court and defendants for several months. Thus, for all of the

15

reasons set forth, defendants ask that we reverse the trial court's denial of defendants' section 2-1401 petition, that we set the parties' settlement agreement aside (requested by defendants implicitly), that we reinstate plaintiff's first amended complaint and defendants' counterclaim (requested by defendants implicitly), and that we remand this case for a disposition of the parties' claims on the merits in the underlying case.

¶ 36    Plaintiff argues that the trial court's ruling was proper and should be upheld. Plaintiff asserts that the trial court correctly found that the sale of the trencher could not have provided defendants with a meritorious defense to plaintiff's first motion to enforce that would have caused the trial court to change its decision, to deny plaintiff's first motion, and to set aside the parties' settlement agreement.  Plaintiff makes that assertion for three main reasons. First, plaintiff contends that the sale of the trencher did not breach the parties' settlement agreement and, thus, did not bar plaintiff from enforcing the agreement. Second, plaintiff maintains that even if it was required to send notice of default before selling the trencher and failed to do so, it would still not be barred from obtaining a stipulated judgment because it did not continue with the agreement, as defendants claim, but, rather, abandoned the agreement and moved for damages for breach. According to plaintiff, moving for liquidated damages did not constitute an election by plaintiff to continue with the agreement. Defendants' argument to the contrary, plaintiff maintains, mischaracterizes plaintiff's use of the word "enforce" in the title of its motion to try to create the false impression that plaintiff chose to continue with the settlement agreement.

¶ 37    Third, plaintiff contends that its failure to give defendants notice and an opportunity to cure prior to the sale of the trencher, did not harm defendants because defendants would still receive a credit for the net proceeds of the sale applied to the balance owed plaintiff. For all the

16

reasons stated, plaintiff asks that we deny defendants' appeal, which we shall presume to mean affirm the trial court's judgment, and that we remand this case for the trial court to hold a prove-up hearing on plaintiff's damages and to enter a judgment in that regard. In the alternative, plaintiff asks that if we determine that plaintiff was required to send notice of default before it sold the trencher and that the question of whether notice was sent was a potentially dispositive fact, that we remand this case for the trial court to hold an evidentiary hearing on whether plaintiff actually sent a notice of default to defendants in October 2020 as plaintiff claimed.

¶ 38        Section 2-1401 of the Code establishes a comprehensive statutory procedure for vacating or modifying a final judgment more than 30 days after the judgment has been entered. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006). A section 2-1401 petition generally has two purposes: (1) to bring to the trial court's attention facts, which if known by the trial court at the time of judgment, would have precluded the entry of the judgment, and (2) to challenge a purportedly defective judgment for legal reasons. See *id.* As a general rule, a section 2-1401 petition must be filed within two years after entry of judgment, unless the underlying judgment was void or the basis for relief was fraudulently concealed from the petitioner. See 735 ILCS 5/2-1401(c) (West 2020); *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). Although a section 2-1401 petition is filed in the same proceeding as the underlying order or judgment, it is not a continuation of the original action and must be supported by affidavit or other supporting documents as to matters not of record. 735 ILCS 5/2-1401(b) (West 2020); *Vincent*, 226 Ill. 2d at 7. Section 2-1401 petitions, therefore, are essentially complaints that invite responsive pleadings and that are subject to the usual rules of civil practice and procedure (motions to dismiss, summary judgment, judgments on the pleadings, evidentiary hearings, and etc.). *Vincent*, 226 Ill. 2d at 8, 17 n.5.

¶ 39　　　　To be entitled to relief on a fact-dependent section 2-1401 petition, such as the one filed in the present case, the petitioner must prove the following three elements by a preponderance of the evidence: (1) the existence of a meritorious claim or defense in the original action, (2) due diligence in presenting the claim or defense in the trial court, and (3) due diligence in filing the section 2-1401 petition. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 51. In resolving such a petition, the trial court must consider the particular facts, circumstances, and equities of the underlying case. *Id.* ¶ 50. A trial court's ruling on a fact-dependent section 2-1401 petition will not be reversed on appeal, absent an abuse of discretion. *Id.* ¶ 51. The threshold for finding an abuse of discretion is high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 40　　　　The dispute in the present case centers around the enforceability of the parties' settlement agreement. A settlement agreement is a contract, and the construction and enforcement of a settlement agreement are governed by contract law. *Haisma v. Edgar*, 218 Ill. App. 3d 78, 87 (1991). Under Illinois contract law, for a valid contract to exist, there must be an offer and acceptance, consideration, and contractual terms that are valid and certain. *Lindy Lu LLC v. Illinois Central R.R. Co.*, 2013 IL App (3d) 120337, ¶ 21. A party who seeks to enforce a contract must prove that he has substantially complied with all material terms of the contract. *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 599 (1987); *James v. Lifeline Mobile Medics*, 341 Ill. App. 3d 451, 455 (2003). Thus, a party who is in material breach of a contract cannot enforce the contract. See *Goldstein*, 154 Ill. App. 3d at 599 (indicating that a party who materially breaches a contract cannot take advantage of the terms of the contract that benefit it or recover damages

18

from the other party to the contract); *James*, 341 Ill. App. 3d at 455 (same). Upon breach of a settlement agreement, the nonbreaching party may abandon the settlement agreement and sue for damages or may continue with the settlement agreement and sue for damages. See *Emerald Investments Ltd. Partnership v. Allmerica Financial Life Insurance & Annuity Co.*, 516 F.3d 612, 618 (7th Cir. 2008). If the nonbreaching party makes the latter election, however, it is bound to the obligations that the settlement agreement imposes upon it. *Id.*

¶ 41    In the present case, we conclude that the trial court properly denied defendants' section 2-1401 petition to vacate the April and August 2021 orders (the orders granting in part plaintiff's first motion to enforce settlement). We reach that conclusion for two reasons. First, defendants failed to establish that they had a meritorious defense to plaintiff's first motion to enforce as was required for defendants to obtain section 2-1401 relief. See *Walters*, 2015 IL 117783, ¶ 51. Contrary to defendants' assertion in the trial court and on appeal, plaintiff was not bound by its obligation under the settlement agreement to refrain from selling the trencher because defendants had breached the agreement at the outset by refusing to sign the agreement, failing to dismiss their counterclaim, and refusing or failing to make the first two required payments. See *Emerald Investments Limited Partnership*, 516 F.3d at 618 (indicating that after a settlement agreement has been breached, the nonbreaching party may abandon the settlement agreement and sue for damages). In the first motion to enforce, plaintiff represented that it notified defendants of the breach and defendants failed to cure the breach. Defendants did not dispute this representation in that proceeding. Defendants also did not dispute that they breached the agreement by failing to make payment. Instead, defendants' only contention was that no settlement agreement existed between the parties because defendants never signed the agreement, an argument which the trial court rejected. Having failed to dispute in the first motion proceeding that notice of default was

19

given, defendants could not come back in the section 2-1401 proceeding and argue that notice of default had not been given.

¶ 42    In addition, although defendants claimed that plaintiff was bound by its obligation to refrain from selling the trencher because plaintiff elected to continue with the settlement agreement after defendants' breach by filing the first motion to enforce the settlement agreement in the trial court, we are not persuaded by that argument. It is clear from the record before us that plaintiff's purpose in filing the first motion was to have the trial court declare that the settlement agreement was valid and enforceable, to find that defendants breached the agreement, and to enter a stipulated judgment in plaintiff's favor in the amount that the parties provided in the settlement agreement. By taking such action, plaintiff was not electing to continue with the agreement but, rather, was abandoning the agreement and moving for damages against defendants for breach. We, thus, reject defendants' assertion that plaintiff elected to continue with the agreement.

¶ 43    Second, and again contrary to defendants' assertion, we do not believe that the equities or the interests of justice favor granting defendants' section 2-1401 petition. See *Walters*, 2015 IL 117783, ¶ 50 (recognizing that in resolving a fact-dependent section 2-1401 petition, the trial court must consider the particular facts, circumstances, and equities of the underlying case). While it is clear from the record that the trial court did not know about the sale of the trencher when it made its April and August 2021 rulings granting plaintiff's first motion to enforce, it is also apparent from the record that defendants were, nevertheless, able to bring that fact to the trial court's attention prior to the filing of defendants' section 2-1401 petition and to have the trial court determine whether the existence of that fact would have changed the trial court's rulings. Defendants raised the issue in their response to plaintiff's second motion to enforce and

20

the parties briefed that issue in those proceedings. Defendants also raised the issue again in their motion to have the trial court reconsider its grant of plaintiff's second motion to enforce, and the parties again briefed that issue. Thus, when the issue was raised for a third time in the section 2-1401 proceeding, the trial court accurately noted that it had already heard and decided that issue.

¶ 44      In sum, defendants in this case failed to establish in the section 2-1401 proceeding that they had a meritorious defense to plaintiff's first motion to enforce the settlement agreement. In addition, the equities and interests of justice did not support granting defendants' section 2-1401 petition because defendants' had already presented their arguments to the trial court in other proceedings and the trial court had already rejected those arguments. Therefore, under the circumstances presented in this case, we must conclude that the trial court did not abuse its discretion in denying defendants' section 2-1401 petition. We also conclude that the trial court did not err in denying defendants' later motion to reconsider that ruling. Accordingly, we affirm the trial court's judgment.

¶ 45                         III. CONCLUSION

¶ 46      For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County and remand this case for further proceedings.

¶ 47      Affirmed and remanded.